Tilghmaít C. J.
In this case there were insurances on ship and goods. There is no dispute about the goods. The question submitted by the jury, is whether certain writings between Scott, Scribner, and Jennings, constituted a bottomry. The declaration states, that Jennings procured the insurance to be made as agent and attorney in fact for Scribner, who was owner of the vessel. Scribner borrowed money of Jennings for which he gave the vessel in pledge. If it was a bottomry, the insurance ought to have been made for Jennings the lender, and not for Scribner the borrower. But if the intention had been to insure the bottomry interest of Jennings, it could not have been done without specifying it in the policy. The question therefore is, whether a good and valid bottomry interest was vested in Jennings. There are three writings to be considered. By the first, Scott is said to be owner and master, and to have borrowed 2500 dollars of Jennings, for which sum he bottomries the vessel (that is the expression). There is no doubt but this was intended for a bottomry, and yet it wants some necessary ingredients. There is neither voyage nor risk mentioned, and the vessel is to remain as the property and at the absolute disposal of Jennings until the money was paid ; so that by anything which appears in this writing, he might have kept her in port till he received payment of his money. The second writing is from Scribner to Jennings. It recites the *231 bottomry, and Scribner binds himself for the payment of 2500 dollars, but no risk nor any time of payment is mentioned. The third writing, which is to be taken in conjunction with the other two, explains the truth of the transaction. It appears that Scribner, not Seott, was the owner of the vessel, and that Jennings had lent to Scribner not 2500 dollars but 2000 dollars, for which he was to receive a premium of 200 dollars a month (equal to 10 per cent.) till the principal was paid. There was to be no risk, but the money was payable at all events, and on being paid, the first and second writings were to be void. The third writing recites, that Jennings had written to Philadelphia to have 4000 dollars insured on vessel and cargo, and provides that the premium of ^insurance shall be repaid to him, together with all other charges, and a commission of five per cent, for ordering the insurance.
It is unnecessary to decide, whether a bottomry may not be made to secure a sum of money lent with legal interest, payable at all events, and accompanied with collateral personal security. This is not a case of that kind. Here the agreement was that more than legal interest should be paid. A bottomry of that sort cannot be supported, unless the money is put at risk ; or, to speak the language of the books, to such a bottomry a risk is essential. Its being called a bottomry by the parties is of no consequence; their calling it so cannot alter the nature of the thing. If Scribner had filed a libel in the Court of Admiralty, praying for relief by sale of the vessel on this agreement, his suit would have been rejected, because it is the consideration of the risk alone, which makes it lawful to take marine interest. The authorities on this point are positive. It is said in Park 416, (4th ed.) that it is of the essence of a contract of bottomry, that the lender run the risk of the voyage, and that both principal and interest be at hazard; this, he says, has been frequently determined in the English courts, and is consonant to the ideas of foreign writers, in support of which he cites Pothier,Not. 16. It is laid down in 2 Marshall (Condy's ed.) 789, that the contract of bottomry must be in writing, and must specify the sum lent with the stipulated marine interest, and the voyage proposed, with the duration of the risk which the lender is to run. Many other authorities to the same purpose, were cited by the counsel for the plaintiff, showing the concurrent sentiment both of the British and other European lawyers. The doubt of the jury was whether it was a legal substantial bottomry, of which Jennings could have availed himself in a court of justice; for if it was not, there could be no ob *232 jeetion to the insurance made for Scribner the owner of the vessel. I am of opinion that the writings referred to by the jury did not constitute a bottomry.
Yeates J.
This cause has been twice tried before me. Upon the first trial in July 1810, it was agreed, that all the facts disclosed to the jury should come before the court for their decision on the legal questions arising thereon: but the *court l)eing °f opinion, that the truth of the case did not sufficiently appear, so as to authorize them to pronounce judgment thereon, awarded a new trial. Some difficulties having occurred as to the manner of stating the property in the schooner Amelia and her cargo (the subjects insured) in the first declaration to be in Jennings, a new declaration was filed by consent, wherein Scribner is stated to be the owner, and that he authorized Jennings to make the insurance through his sub-agents Elliston and John Perot, and the loss is alleged to be by capture by the British brig Lark, and the property of the schooner and cargo is averred to be in Scribner. The cause came on again to trial in April last, when the jury found for the plaintiff 5285 dollars 90 cents, provided the court should be of opinion that the document from Scott and Scribner was not a bottomry. But should the court be of opinion, that it was a bottomry, then the jury found for the plaintiff 1510 dollars two cents, and it was mutually agreed at the time, that the finding should be considered in the nature of a conditional verdict.
The jury have established the truth of the plaintiff’s case as stated by him, but leave the legal operation of certain instruments to be decided on by the court. We are not at liberty to go into the evidence adduced on the trial, which may impugn the verdict; but are confined to the question submitted to us.
No joint instrument appears to have been executed by Scott and Scribner; but three different documents appear in the same sheet of paper relating to the subject in dispute; one signed by William Scott on the 5th March 1801, to R. D. Jennings; one other signed by Eliphalet Scribner on the same day to Jennings; and one other by Scribner to Jennings on the day following, viz., 6th March, 1801. The words of these papers formed the grounds of argument during the trial, and to them the jury must necessarily have referred; and they have been treated as such, in the course of the argument on the verdict.
It is agreed on both sides, that a respondentia interest, as *233 well as a bottomry, must be specifically described in the policy of insurance. What then is a bottomry? No precise form of words is necessary to constitute the writing. But all commercial writers agree, that its essential characteristic is, *that the money lent is at the risk of the lender during the voyage; and that the repayment thereof depends on the event of the successful termination of the voyage. It is defined by Marshall, to be a contract in nature of a mortgage of a ship, on which the owner borrows money to enable him to fit out the ship, or to purchase a cargo for a voyage proposed, and he pledges the keel or bottom of the ship, pars pro toto, as a security for the repayment; and it is stipulated, if the ship should be lost in the course of the voyage by any of the perils enumerated in the contract, the lender also shall lose his money; but if the ship should arrive in safety, then he shall receive back his principal and also the interest agreed upon, generally called marine interest. 2 Marsh. 783.
The intention of the parties governs in commercial transactions, to which principles of the purest good faith are applicable. It is not essentially necessary, that the money’s being at the risk of the lender during the voyage, should be expressed in the body of the written instruments, if it be susceptible of proof by facts, or may fairly be inferred from circumstances. Nor is it requisite to a bottomry, that more than the usual legal rate of interest should be reserved. Such is generally the ease; but it rests on the agreement of the parties, who will take care to proportion, the rate of interest to the extent of the risk. This appears to be laid down in 2 Johns. Ca. 250, wherein it was also held, that a clause in the instrument empowering the lender of the money to sell the vessel, did not destroy its character or operation as a bottomry bond. It is also clear, that calling the instrument a bottomry, does not make it such, if it really was not so in its legal operation. Hall’s Emerig. 33.
I proceed to examine the documents referred to by the jury. The first instrument under seal, is subscribed by William Scott, who styles himself master and owner of the schooner, and bottomries the schooner, her apparel, &c., to Jennings, to remain as his property and to be at his absolute disposal until the sum of 2500 dollars shall have been fully and bona fide restored to him, free from all expenses. The contingency on which the money is to be repaid, is not expressed ; and can only be inferred from the verb bottomrie, to depend on the safe arrival of the vessel at her destined port. This paper may or may not be a bottomry according to the *234 *true intent and meaning of the contracting parties. But one thing is certain from the finding of the jury, that the property of the schooner and her cargo was established to be in Scribner; and of course Scott could at most be only the colorable owner.
The next instrument, also under seal, is subscribed by Scribner on the same day and before the same witnesses, who at the request of Captain Scott, and for the more ample satisfaction of Jennings for the advances made by him, binds himself as a principal in the bottomry bond expressed on the other side; and for the payment of the sum therein mentioned bound himself Ms heirs and assigns there, (St. Thomas’s) or elsewhere, till the said payment should be fully and completely made. If this paper is considered as a pledge or mortgage of the schooner, put into the possession of Jennings and at his absolute disposal for his further security, he would be entitled to her freight. But if it is deemed a bottomry according to the literal expression, it would seem to defeat the object of the contracting parties. Whatever rights however might accrue to the plaintiff, under a fair exposition of its contents, it cannot be denied, that Scribner bound himself absolutely and at all events for the payment of the money in all places whatever. His liability did not depend on the safe arrival of the vessel at her ports of destination; but whatever contingency might happen, he bound himself for payment of the sum stipulated to be reimbursed.
The last instrument without seal places the objects of the contracting parties beyond all doubt. It recites the advance of 2000 dollars by Jennings to Scribner at the earnest request of the latter; and that the former had written to Philadelphia to have the sum of 4000 dollars insured on the schooner Amelia from St. Thomas to Aux Cayes, and from thence to some one port in the United States; and then states that Scribner bound himself, his heirs and assigns for the sum of 2000 dollars to be paid to Jennings or his order, together with all the cost of premium and other charges of insurance, with five per cent, commission for ordering the same, and moreover to allow Jennings 200 dollars per month, to be paid at the expiration of ea.eh month, till the whole of the before described advances should be fully satisfied and PaM i *and which being fully paid should render the bottomry and bond null and void.
This was the final agreement of the parties, after instructions had been given to the Messrs. Perots to effect insurance. The premium and commissions were to be paid by Scribner, his interest being intended to be insured. He had *235 a defeasible interest in the schooner, which might legally be insured. 11 East. 620. It was in all probability thought, that the voyages would be completed in two months and a half, which allowing 200 dollars per month, would bring up the sum to 2500 dollars, the sum formerly stipulated to be paid ; a pretty round sum I must confess, but the policy is not vacated thereby. I consider all the three different papers as one instrument, and to be judged of accordingly. So far as the last changes and alters the agreements of the preceding day, they are superseded thereby ; for such was the meaning of the parties. But the second instrument created a responsibility on the part of the now plaintiff', which did not depend on the prosperous event of the voyage. So also of the last, which varied the first contract. The want of a seal is no objection thereto, by the general maritime law; and though it might not operate as an extinguishment by the principles of the common law, yet it certainly may be adduced to show the final arrangement of the parties.
On the whole, I am of opinion, that the documents taken together do not amount to a bottomry, and that judgment be rendered for the plaintiff for the larger sum under the terms of the verdict.
Braokenrid&e J.
It is not the name given to a thing that will make it what it is called. An estate for life will not be made a fee-simple by being called so in a deed or devise. The words “ I do hereby bottomry the schooner Amelia,” will not make a bottomry, if from others used it appears that the bottom of the schooner was not the only security which the lender of money, to whom the bottomry purports to be made, retained by the writing. In this case, even under that part of the writing signed by Scott, the security would not seem to be confined to the bottom arriving safe from her voyage, but a present advantage was to be derived from her freight until the money was reimbursed; and it does not follow from the *terms of the writing, that even on the loss of the bottom, the borrower was not still personally liable for the sum advanced until discharged. For though a lesser sum than 2500 dollars may have been advanced, yet a greater sum payable may have been in lieu of interest, the principal being to be received from the possession and use of the vessel. It is therefore not strictly a bottomry, but an hypothecation or mortgage, where the money lent is not wholly at risk, and depending on the safety of the vessel.
But if there were any doubt on this first part of the document referred to by the jury, as to the nature of it, taken *236 with that which is added to it, and now must be taken with it, which is signed by Scribner, and is a collateral security from him for the payment of the money, and by the terms of which he makes himself a principal in the bottomry bond expressed in the writing signed by Scott, while at the same time he binds himself to be responsible, his heirs and assigns, till the said payment is fully and completely made, it clearly appears that the first writing signed Scott, was not intended to be a bottomry properly so called, and depending on the safety of the vessel. •
The third writing of May 6th, signed by Scribner, taken with the two preceding, and constituting a part of it, shows more fully the nature of the contract, and that the repayment of the money did not depend solely on the safety of the bottom, which is of the essence of a bottomry, but that the money advanced was at all events payable. The real insurer in this case was Scribner, Jennings but nominally, who had nothing in the vessel but a qualified interest, a present use under the writing, and an hypothecation as a security, with which the personal responsibility of the borrower was coupled, and that of Scribner now superadded.
I would not call the document in this case a bottomry.
New trial refused.