## Case No. 8,237.

### LELAND et al. v. MEDORA.

[2 Woodb. & M. 92.] [1]

Circuit Court, D. Massachusetts. Oct. Term, 1846.

MARITIME LIENS — FOR REPAIRS — ALLOWED TO SAIL—BILL OF EXCHANGE TAKEN—BILL OVERDUE—LIEN WAIVED.

1. A lien exists on the vessel for repairs made and supplies furnished when she is a foreign vessel. But it is doubtful whether this lien is to be considered as relied on, if the vessel is allowed to sail without its being enforced; and in case of a foreign vessel without taking any express hypothecation of her from the master, where the person making such repairs and advances is the consignee of the owners, and takes for his debt a bill of exchange by the master on the owners, allowing sixty days' credit. Under these circumstances, if he permits the vessel to depart, and to make a second voyage before attempting to enforce the lien on the vessel, and refrains for one month after the bill is due to collect it of the owners, then in good credit, it is decisive evidence that the lien has been waived, and if it once existed, he is not then permitted to sustain the lien on the vessel, though offering to return the bill of exchange.

[Cited in Packard v. The Louisa, Case No. 10,652; The Bolivar, Id. 1,609; Macy v. De Wolf, Id. 8,933; The Dubuque, Id. 4,110; Griswold v. The Nevada, Id. 5,839.]

2. When a bond provides for no marine interest, or marine risk, and its condition is a mere pledge of a vessel to secure a debt and simple interest, it is not a bottomry bond.

[Cited in Greely v. Smith, Case No. 5,750.]

3. Whether a libel lies on a mere mortgage of a vessel, as a chattel, to secure a debt, if arising out of a maritime contract and business or not, is doubtful here, and is sustained in England now only under an express statute.

[Cited in Deshon v. The Medora, Case No. 3,820; The John Jay, Id. 7,352; The J. B. Lunt, Id. 7,246; The Paola R., 32 Fed. 175; Diefenthal v. Hamburg-Amerikanische Packetfahrt Actien-Gesellschaft, 46 Fed. 398; The Main, 2 C. C. A. 569, 51 Fed. 958.]

4. When the vessel has been previously libelled for a subsequent bottomry bond, and for wages of the seamen, and duly sold to pay them, as such liens have precedence over prior ones, a person holding a mortgage of the vessel to secure a debt for advances made for her last voyage, is allowed to interpose a claim on the balance of the proceeds in the custody of the court, whether he could or could not sustain a libel to enforce it against the ship originally.

[Cited in Almy v. Wilbur, Case No. 256; Carr v. Gale, Id. 2,435; Hill v. The Golden Gate, Id. 6,491; The Sailor Prince, Id. 12,219.]

5. His mortgage is valid, though not recorded till the assignee of the owners, after their going into insolvency, receives an assignment of their property, and gives public notice thereof.

[Cited in Packard v. The Louisa, Case No. 10,652; Bentley v. Phelps, Id. 1,331; Sawyer v. Gill, Id. 12,399; Tufts v. Tufts, Id. 14,233; Webb v. Powers, Id. 17,323.]

[Cited in Golden v. Cockril, 1 Kan. 259.]

6. It is not fraudulent, because possession did not accompany it, when by agreement in the mortgage an immediate voyage by her was contemplated to be made by the owners.

[Cited in Almy v. Wilbur, Case No. 256; Sohier v. Merril, Id. 13,158; Whetmore v. Murdock, Id. 17,509.]

7. And though a part of the consideration was not money actually advanced for the voyage, the obligation for it on a mortgage is still good, however it might be in case of a bottomry bond.

[Cited in Brown v. Noyes, Case No. 2,023; Greely v. Smith, Id. 5,750; Whetmore v. Murdock, Id. 17,510.]

[Cited in Jelison v. Lee, Case No. 7,256, to the point that in admiralty as well as in common law, costs are given to the prevailing party.]

[Appeal from the district court of the United States for the district of Massachusetts.]

This was an appeal from a decree of the district court, dismissing the following libel. It was filed March 30, 1846, and among other things alleged, that the ship Medora was in January, 1845, owned by citizens of the state of Massachusetts, and being at New Orleans, in the state of Louisiana, and needing repairs to make her seaworthy, and requiring money to defray other necessary charges and wages of her seamen, the libellants advanced to the master of her, and paid for such purposes the sum of $1602.95, according to an account thereof annexed. It was further averred, that these supplies were furnished on the credit of the ship as well as of the master, and not having been paid, and the ship having since been absent on a voyage to Manilla, whence she had recently returned, this libel was filed to enforce the payment of the amount due. On the usual notice being given by the court, James Deshon appeared and defended against this claim, and after filing the usual security for cost, set out in his answer, that March 25, 1845, said ship then being in the port of Boston, Benjamin Fisk, Jr., and Isaac W. Bradford, her owners, applied to him for a loan of $6,000, upon the bottomry and hypothecation of the ship, and he loaned the same for six months at six per cent. interest, they creating to him a bottomry bond therefor on said ship, a copy of which is annexed to his answer. That he then knew of no lien or incumbrance on the vessel, but believed her to be free from any, and thus became the purchaser of her in good faith, and for a valuable consideration. That she performed the contemplated voyage to Manilla and back, as named in the libel, and the six months' credit having expired, he has filed a libel in the district court against the vessel to recover the sum due, being $5866. That he entered and took possession of the ship under his mortgage, and caused the same to be duly recorded, July 19, 1845. That he requires the libellants to prove their allegations in respect to their advances and reliance on said vessel for payment, and is informed and believes, that if they paid anything on her account, it was satisfied in full by a bill of exchange, accepted by them for the same, drawn on the owners by the cap-

1 [Reported by Charles L. Woodbury, Esq., and George Minot, Esq.]

tain of the vessel, payable in sixty or ninety days after sight, and accepted by them and negotiated away by the libellants. That the vessel was not subject to a lien to the libellants for such advance, either by the laws of Louisiana or the general maritime law; and if one ever existed, it has since been waived or discharged by neglect or payment, and is not now prosecuted within a reasonable time; and that the libel should therefore be adjudged against, and the proceeds of the vessel delivered to him.

The libellants replied, protesting ignorance of what is newly alleged by Deshon, and asking proof thereof, and averring in respect to the bill of exchange named, that the master, Rhodes, drew one on the owners for the amount of the supplies, and with the current rate of exchange added, payable in sixty days from date, and delivered it to them, and it was by them indorsed and forwarded to their agents for collection, and accepted by the owners, but not paid at maturity, they having in the mean time become insolvent. Being protested, it still remains unpaid. They further averred, that this bill was not received by them in payment, or their lien discharged thereby, or they guilty in any way of neglect; and that the bill is now in court in their possession, ready to be cancelled or given up.

The evidence in the case consisted of the bill of exchange, dated Feb. 1, 1845, and of the tenor before named, and the deposition of the captain, proving the amount and necessity of the supplies. He also testified, that the libellants were the consignees of the vessel, and had previously done the business of the owners at New Orleans. That the account for supplies was made out against the ship Medora and owners. The receipt on it of the bill of exchange does not state whether it was received in payment or not, though it is entered on the credit side as balancing the account, and the captain does not remember that any conversation on that point took place at the time. The vessel returned to Boston from New Orleans, and during the month of March, 1845, was fitting out and advertised for a voyage thence to Manilla and back, whither she sailed March 31, 1845. The bill of exchange was negotiated or discounted by their agent, but without their knowledge, and being unpaid when falling due, which was April 2, 1845, was taken up by their correspondents, and has been offered to be cancelled. The drawees were in good credit till their failure, April, 1845, and sixty days is not an uncommon length of credit on bills drawn at New Orleans. The district court on the evidence, decreed that the libel be dismissed. Henry Winsor then interposed a prayer, that he, as assignee of the owners, under the insolvent laws of Massachusetts, might receive the proceeds of said vessel. But his motion was refused, and the libellants then appealed from the decree against them. No order

was made on Deshon's claim. In this court Winsor has been permitted to be heard in favor of his prayer, as assignee of the former owners of the ship, claiming the proceeds to be distributed among their creditors.

F. C. Loring, for libellants.
Mr. Goodrich, for Winsor.
Mr. Choate, for Deshon.

WOODBURY, Circuit Justice. Beside the facts proved at the hearing of this case, and others admitted in writing, of which a synopsis has just been given, it was conceded that this vessel had been sold under previous libels. One of these was in favor of persons, who made necessary advances at Manilla on her last voyage, and had taken a bottomry bond therefor, and the other was for the seamen for wages. After satisfying those claims some proceeds are left, and the contest now is, whether the libellants have a prior claim and lien on them, or Deshon, or neither, but Winsor, the assignee of the former owners. The decisions in England may once have been against a lien by the libellants. Abb. Shipp. 115, notes; 1 Salk. 34; The Zodiac, 1 Hagg. Adm. 325; 2 Ld. Raym. 805; 2 Browne, Civ. & Adm. Law, 35. And so here. North v. The Eagle [Case No. 10,309]; Woodruff v. The Levi Dearborne [Id. 17,988]. But here it is now settled, that a lien generally exists on a foreign ship for repairs, or advances of money on her, in case of necessity, though no express hypothecation is made. The Nestor [Case No. 10,126]; Davis v. New Brig [Id. 3,643]; The Aurora, 1 Wheat. [14 U. S.] 96, 105; Bac. Adm. 131, 168, 178; The General Smith, 4 Wheat. [17 U. S.] 438; St. Jago de Cuba, 9 Wheat. [22 U. S.] 409, 416; Gardner v. The New Jersey [Case No. 5,233]; Peyroux v. Howard, 7 Pet. [32 U. S.] 324, 341; The Chusan [Case No. 2,717]; 3 C. Rob. Adm. 288; Rule 17 Adm. Prac.; 1 Hagg. Adm. 324; The Jerusalem [Case No. 7,294].

A ship for this purpose is also deemed foreign in one state, if belonging to another in the Union. The Nestor [supra], and cases cited; Dunl. Adm. Prac. 481; [The General Smith] 4 Wheat. [17 U. S. 438]. So Ireland in Great Britain, is for such purposes deemed foreign. The Rhadamanthe, 1 Dod. 205. It has been said, to be sure, that a vessel repaired abroad, is not liable for a lien, unless an actual hypothecation is made by the master,—see Johnson, J., in [Ramsay v. Allegre] 12 Wheat. [25 U. S.] 614,—or unless some statute creates a lien,—Conkl. Adm. Prac. 155. But this is contrary to the general doctrine now prevailing, as shown by the numerous cases already cited; and conflicts also with the civil law on this point. 1 Hagg. Adm. 325; 2 Browne, Civ. & Adm. Law, 35. If the evidence, however, shows, that the ship was not relied on originally, though foreign, but the master or owners or

other security were, the lien does not attach any where, or under any form. The Maitland, 2 Hagg. Adm. 253; The Nestor [supra]. Thus, if an agent or consignee made the repairs or advances, to whom the owner was known, and with whom he was in good credit, as is contended to be the case here, the lien does not usually arise. Pritchard v. The Lady Horatia [Case No. 11,438]; 1 Dod. 201, 287, 356; Hurry v. The John [Case No. 6,923]; Abb. Shipp. 189, 190; [The Aurora] 1 Wheat. [14 U. S.] 96; Rucher v. Conyngham [Case No. 12,106]; 3 Kent, Comm. 172; 2 Dod. 139; 3 Johns. 352; Harper v. New Brig [Case No. 6,090]; 3 Knapp, 94. If an express hypothecation is not required in such a case, it furnishes some evidence that the vessel is not looked to, because the claim would, under an express hypothecation, stand so much clearer, higher, and undoubted. It may be, however, that the claimant does not choose to risk the bottomry.

And even an express bottomry, if given to a consignee, will not always hold if the credit seems to have been otherwise at first given to the master or owners, and if an express hypothecation was not resorted to originally, because the owners were little known, or their credit was limited. The Hero, 2 Dod. 143, 144; Liebart v. The Emperor [Case No. 8,340]; 3 Hagg. Adm. 102; 1 Dod. 201, 287; Rucher v. Conyngham [supra]. Much less, then, should an implied lien on the ship arise in favor of a consignee, and continue after she sails, and after taking a bill of exchange on time, when an express lien will not always hold, if created in favor of a consignee. And more especially should it not usually hold, as there being a consignee to give credit and make advances, this circumstance repels the necessity of an hypothecation, either express or implied, and which necessity alone empowers the master to make an express one. Tunno v. The Mary [Case No. 14,237]; Boreal v. The Golden Rose [Id. 1,658]; Sloan v. The A. E. I. [Id. 12,946]; Liebart v. The Emperor [supra]; Canizares v. The Santissima Trinidad [Case No. 2,383]; 3 Hagg. Adm. 66, 74, 86, 387. But here no express lien by a bond was asked for or given.

In the next place, whether an implied lien existed here originally or not, (and considering the relation in which the libellant stood as consignee of the vessel, it is somewhat doubtful,) there is much evidence that it was afterwards waived, if once existing. There can be no doubt, that the lien which exists on domestic ships for repairs by material men is waived or lost, if they are only allowed to sail, unless it is otherwise provided by express statutes in particular states. Abb. Shipp. 77, note; The Planter, 7 Pet. [32 U. S.] 345; 2 Dow. 29; 11 Mass. 34; 15 Johns. 298; 16 Johns. 89. See Packard v. The Louisa [Case No. 10,652], and cases there cited; The Nestor [supra].

At common law, a lien generally ceases with the loss of possession. Ex parte Foster [Case No. 4,960]; 6 East, 21, 25, note; 2 East, 227, 235. But in admiralty, liens are lost after possession actual or quasi ceases; as sometimes, after a seaman leaves the ship, or the lender on bottomry allows her to go to sea, or the repairer of a foreign vessel allows it. Ex parte Foster [supra]. So in equity, they are lost sometimes, but it is then when the lien is not so much an interest in re, or, as it is called, jus in re, or jus ad rem, as a charge or incumbrance on the property. 2 P. Wms. 491; 11 Ves. 617; [Conard v. Atlantic Ins. Co.] 1 Pet. [26 U. S.] 386, 441. It is, then, like a lien by a judgment, perfected. 4 Law R. 67. The case of an attachment is not such a lien as those, because it is not perfected by a judgment. A mortgage is a lien in rem, but an execution, on judgment, is not; they being merely a general charge on the. property, not an interest in it. In many cases of liens, therefore, it is proper and prudent to enforce them before possession is parted with, though it is not indispensable in all cases. North v. The Eagle [Case No. 10,309]; 3 Hagg. Adm. 253; Packard v. The Louisa [supra], and cases there cited. Thus it has been decided in The Nestor [Id. 10,126], that in this country a lien on a foreign vessel holds after she quits the port, though no bottomry bond is taken for repairs or advances. It should, however, be enforced seasonably. I have met with no cases where the lien has in that class been sustained beyond the close of the next voyage, —The Nestor [supra],—or beyond the time allowed as a credit in the note or bill of exchange given, if one be given,—Id. In The Chusan [Case No. 2,717], the exact time does not appear, but no subsequent sales, or subsequent mortgages without notice, had there taken place before it was enforced. The Louisiana Code allows the lien but one year. Article 3449. In Packard v. The Louisa [supra], decided at this term, no case was found, extending this maritime charge or lien on the vessel for wages, which is the most favored one in courts of admiralty, beyond the next voyage, if she continued in active employment, or if the rights of third persons had intervened.

So, if he who repairs or lends money, takes other security, and no express bottomry bond or mortgage, such as a negotiable note or bill of exchange, it may be some evidence either of not relying on the ship at all, or of having relinquished his lien. [Peyroux v. Howard] 7 Pet. [32 U. S.] 345; 4 Camp. 150, note; Hutton v. Bragg, 2 Marsh. C. P. 339. Whether a note or bill of exchange, taken of an owner or master, will be a discharge of a lien or not, or of a co-owner, is a different question. It has been decided to be a discharge in Massachusetts, 10 Mass. 47; and in Maine, The Eastern Star [Case No. 4,254]. And the

other way, not to be a discharge, in 1 Cow. 299; North v. The Eagle [supra]. Where a bill of exchange is taken and secured in the express bottomry bond, of course it is no discharge of the lien created by the bond, as it is not alone looked to. Such are many of the cases reported. The Augusta, 1 Dod. 286; The Jane, Id. 466. Or, if taken as collateral security drawn on other persons. 3 Hagg. Adm. 1, 13, 253. But if a bill of exchange is taken by a consignee or agent for the amount, it is prima facie evidence, that he looks to it rather than the vessel, and especially if it gives time, and difference in the exchange is deducted as here. 19 Ves. 474; 3 Ves. & B. 135; 2 Hagg. Adm. 136; Murray v. Lazarus [Case No. 9,962]; Ramsay v. Allegre, 12 Wheat. [25 U. S.] 611, semb. But if meant as a payment, and if it enables the person giving it to settle with his co-owners, it is to be decreed a payment, and consequently a release of any lien. 5 Esp. 122; 3 East, 147; 15 Johns. 276; 1 Cow. 290; 2 Dow, 29; Riley v. Anderson [Case No. 11,835].

The question here, however, is still different, and is, whether taking such a note or bill of exchange of the master, and to run sixty days, and letting the vessel depart, is not, in connection with the payee's being consignee, satisfactory evidence of a waiver of the lien. The waiver is a fact for the court to settle on all the evidence. Stevens v. The Sandwich [Case No. 13,409], and notes.

Taking a promissory note of the owner or ship's husband for repairs, is a waiver of a suit in admiralty against him. Ramsay v. Allegre, 12 Wheat. [25 U. S.] 611. But the supreme court (Id. 614) declined to go into the question, unless the note was first given up, and it has been stated that no opinion by the supreme court was given or formed on that point; and in The Nestor [supra], it was held, that merely taking a note for the supplies, did not always waive the lien. But it raised a strong presumption to that effect. Because the lien, if remaining, might be in one person, and the note be negotiated and be in another, as the bill was on time in the case now under consideration, and actually negotiated. In The Chusan [supra] it was held, that such a note, except in Maine and Massachusetts, was not prima facie a bar to a suit on the account, and must not be deemed a waiver of the lien on the vessel, unless proved to have been so intended from all the facts. It was decreed no bar in that case. See other cases. 1 Dod. 466; 1 W. Rob. Adm. 421; The Hunter [Case No. 6,904]; Code La. arts. 2180, 2191. It is not a discharge of a lien on a ship for wages, if a sailor takes a mere memorandum to show the owner the amount, and prosecutes before more than one voyage is known to have taken place. The Rebecca [Case No. 11,618]. But it is a discharge, if he takes it in payment in preference to money. The Wm. Money, 2 Hagg. Adm. 136.

In the next place, there is strong evidence here to show the loss of any lien, which may have once existed, by the delay to collect the bill of exchange after due, as well as the delay to enforce the lien against the vessel till a second voyage took place, and till the expiration of a year and some months after the vessel was allowed to depart from Louisiana, where the supplies had been furnished. The evidence finds, that the length of credit given in the bill of exchange terminated April 2, 1845, and the owners were in good credit till the 29th of the same month. This additional indulgence given, and omission to enforce payment of the bill when it could have been secured, is wholly unexplained, and coupled with the permission of a second voyage, and the lapse of near a year and a quarter before proceeding against the vessel, is strong evidence of such neglect in prosecuting the lien as, united with the other facts, ought to dissolve it. The apology for not proceeding against the vessel before the second voyage, because the credit given in the bill of exchange had not expired, is no answer for not enforcing the lien on the vessel. The libellants had agreed only to wait on their claim against the owners and master, but not on their claim against the vessel.

If they did in fact agree to suspend the last, their lien may be lost on another ground, which is, that a lien, once suspended, is lost. If the bill and the length of time given to pay it did not extinguish or suspend the lien, but was mere collateral security, then the lien ought to have been prosecuted at the end of the first voyage, whether the bill, the collateral security, had become due or not. Even in an express lien on a vessel created by a bottomry bond, payable on its face only, in a certain number of days after the arrival of the vessel, it has been held that proceedings may be instituted against her on the lien before those days expire. The Jane, 1 Dod. 463. She may be taken possession of at the end of the voyage, though perhaps not sold till the credit expires; and especially may she be taken if, as here, she was about to proceed on another voyage. Again, if the lien on the vessel be regarded in this case as a collateral security for the bill of exchange, as it must be, or, as before remarked, the lien was satisfied, and probably thus lost, it is like a mortgage for a debt, and not payable by agreement till a particular day. In such case the mortgagee is entitled to possession forthwith, as a general rule. 11 Pick. 77; 23 Pick. 9. And in all cases of personal property mortgaged, the mortgagee ought to take possession, or place his lien on record for notice to the world. If doing neither, it has been long contended, that the lien is void for fraud. Haven v. Low, 2 N. H. 13. And of late, many states make it void by express statute, unless the mortgage is recorded, or possession changed,

where, before such a statute, it has been upheld, as it has been generally when the parties agreed, or the nature of the case showed, that possession was originally intended to be retained for a time by the mortgagor.

Such is the agreement or understanding in bottomry bonds usually by the express compact in them, it being for the obligor or mortgagor there to retain possession so as to carry such a bond into legal effect, by subjecting the vessel to a marine risk, before the right to repayment on the lien can be enforced. Moreover, such possession, it is usually understood, shall be retained for the coming voyage by the maker of the bond in order to earn means for its payment. To be sure it may be said that he who lends or repairs, has a right to hold on to the vessel till he is satisfied, and this will not generally defeat the object of the repairs and advances, a further voyage; because if the captains or owners have not funds nor credit at the foreign port, they can be raised, or the claimant satisfied by the express hypothecation to him or others, which the law authorizes the master in such a case to make. Yet it is to be remembered, that the lender or repairer may not choose to risk his debt on a bottomry bond, and the master may not be able to borrow elsewhere, and repay; and hence the lien is allowed to continue there till the ensuing voyage ends, but seldom longer. The analogies in the case of like liens or charges on vessels for seamen's wages have been considered in the case of Packard v. The Louisa [Case No. 10,652], at this term, where the cases are collected, and the impolicy of the long continuance of such liens unenforced, fully explained. In no case should they extend beyond the next voyage, if they are unknown to the public, and new interests of third persons as to the vessel intervene without notice. Here, the Medora, before the second voyage, became in need of further advances, and they were made by Deshon without notice of the lien now set up, though making special inquiry of the master on the subject of any outstanding incumbrance. This is a new and separate ground against a recovery from that of Deshon being entitled to sustain his claim on the ground, that the conveyance to him was in bottomry, or, if not so, was a mortgage, duly recorded so far as regards the assignee of the owners.[2]

In this view the conveyance was for a valuable consideration without notice, and hence, on general principles, was good between the parties, whether seasonably recorded or not. See post. Such conveyances, as a general principle, are valid against all previous parol trusts or liens, when the maker of the conveyances is in possession of the property. 2 Browne, Civ. & Adm. Law, 143; Ayl. Pand. 548. Yet maritime liens

must be considered in some instances as exceptions, but exceptions are often dangerous to be extended beyond what is necessary, and not of course to be encouraged or enlarged beyond what is equitable against subsequent bonâ fide purchasers without notice. Lewin, Trusts, 207; 9 Ves. 100; 2 Story, Eq. Jur. 1215, § 1228. Hence, in the case of Packard v. The Louisa [supra], indulging the lien into a second voyage was considered as usually too great laches, if third persons without notice become in the mean time interested. In this case, had Deshon's conveyance been good as a bottomry bond, as was contemplated probably by the practice, it would have to be first satisfied, though he had possessed notice, or the first voyage had not been completed. For the last bottomry is always to be first paid. See ante. As it is, being, as we shall soon see, only a mortgage, yet Deshon ought to be regarded as a purchaser of this vessel without knowledge of the previous lien; and if so, I think he ought not to be affected by a lien continued after the end of a voyage. Even a bottomry bond, though binding without being recorded, is a lien on the vessel only for a reasonable time, or the time agreed in the bond, and if not enforced then, other creditors or claimants may prevail against it. See Blaine v. The Charles Carter, 4 Cranch [8 U. S.] 332; Packard v. The Louisa [supra]. See, also, The Chusan [supra].

Finally, the libellants, not being entitled to a decree against the vessel, on the grounds of doubts as to their advances having been made on the credit of the vessel, as well as on the strength of the evidence, that it was waived, if once existing, by taking a bill of exchange therefor, and allowing the vessel to depart, and giving sixty days for payment to the owner; and also, that if not waived, it was lost by neglect in not collecting it on the bill for nearly one month after it fell due, and the owners were in good credit, and not prosecuting the ship till after her return from a second voyage, and the lapse of a year and some months, and an intermediate mortgage of her to Deshon without notice of any previous lien; the judgment of the court below, dismissing the libel, must be affirmed. But the funds being now in the district court which remained of the proceeds of the vessel, and there being two other claims made on them, which are still unsatisfied, it is necessary to settle which is entitled to priority in receiving the money. It is objected to the claim by Deshon, in the first instance, that not being on a good bottomry bond, by not placing the loan at risk, by the loss of the vessel, or by being not on marine interest, or on advances exclusively made on account of the voyage, it amounts to a mere mortgage of a personal chattel, and if so, it is a claim not to be enforced in a court of admiralty. It is further contended to be void even as a mort-

---

[2] [See Case No. 3,820.]

gage, because not recorded till the property of the mortgagor was assigned to Winsor, for the benefit of the creditors of the mortgagor; and for having fraudulent badges about it. I entertain an opinion, that this was not a good bottomry bond, though executed at home by the owners. It is said that such bonds so executed need not be for advances on the ship for the coming voyage. Though the consideration of a bottomry bond by a master abroad, must be repairs or advances at that time for the ship, in order to create the necessity which justifies his acts, yet the owner, it is held, may give a good bottomry for other than advances to the ship. The Draco [Case No. 4,057]. This is contradicted, by Ariadne, 1 W. Rob. Adm. 421; [The Aurora] 1 Wheat. [14 U. S.] 96. But this is not decided by me to be an invalid objection, looking to the true theory of bottomry bonds, though I pass it by on this occasion, there being other clear objections, which are fatal to it as a bottomry obligation. Some views against it may be seen in 2 Browne, Civ. & Adm. Law, 196; Cambioso v. Maffet [Case No. 2,330]; [The Aurora] 1 Wheat. [14 U. S.] 104; 1 Dod. 283.

One of those other objections is the want of a sea risk. It is essential to a good bottomry bond, that the debt be risked on the bottom and loss of the vessel. The Atlas, 2 Hagg. Adm. 48, 52, 65; Abb. Shipp. 558; Jennings v. Insurance Co. of Pennsylvania, 4 Bin. 244; The Draco [supra]; 3 Barn. & Ald. 50; The Mary [Case No. 9,187]; Hurry v. The John & Alice [Id. 6,923]; 2 Hagg. Adm. 57; Park, Ins. 552, 558; Pritchard v. Lady Horatia [Case No. 11,438]; Abb. Shipp. 203, 204; The Draco [supra]; 2 Dod. 8, 9; Rucher v. Conyngham [Case No. 12,106]; Hurry v. Hurry's Assignees [Id. 6,922]; Blaine v. The Charles Carter, 4 Cranch [8 U. S.] 328; 2 P. Wms. 367; Miller v. The Resolution [Case No. 9,588]. An admiralty court also gets no jurisdiction over the case by the instrument being called a bottomry bond, unless it possess the essentials of one, such as the risk on the vessel just named. The Emancipation, 1 W. Rob. Adm. 130. So, if there be no marine interest in it, or if it be to secure a bill of exchange for repairs, it may be valid as a mortgage, but no jurisdiction exists then in admiralty as over a bottomry bond. 2 W. Rob. Adm. 110. There was no pledge of the vessel in that case as a mortgage, but the vessel was described as bound, and held for payment, and it did not give jurisdiction. The contract here has neither any marine interest provided for, or any loss of the vessel stipulated to cause the loss of the debt, and has no feature of a bottomry bond, except its title, and the security being on a vessel; and hence would give no admiralty jurisdiction over it as a bottomry bond in England. 2 P. Wms. 367.

At some of the custom-houses in this country and in India, and perhaps some other places, a bond like this may be called a bot-

tomry bond, when on a vessel's bottom as security, and when only for legal interest, and payable at all events, though such is not the usual definition of such a bond in admiralty courts generally; and though it cannot have the high privileges of a real bottomry bond. The Draco [Case No. 4,057]; Jennings v. Insurance Co. of Pennsylvania, 4 Bin. 255; 2 Hagg. Adm. 52, 54, 55. It may be good as a mere mortgage, but in that event it has no superiority or privileges over other mortgages, unless, as hereafter examined, it has some claims for higher respect in admiralty courts, by being a mortgage of a ship, and for a debt connected with maritime business. It is, then, in this case, a mere mortgage of a chattel. It is, then, of course, to be governed by all the rules, and the law in respect to other mortgages of such chattels, and the rights under it are to be settled at common law, unless the subject-matter being a vessel, or the consideration being maritime, the courts of admiralty can get jurisdiction on that account. In England it seems to be well settled, that her courts of admiralty have no jurisdiction over the mortgage of a vessel, merely because the subject-matter is a vessel. 2 Browne, Civ. & Adm. Law, 95, note 33; Atkinson v. Maling. 2 Durn. & E. [2 Term R.] 462; The Draco [supra]; 1 Kent, Comm. 353; Hall, Adm. 135, 137. Indeed, in England it was well settled before a recent statute, that courts of admiralty had no jurisdiction over mere mortgages of vessels, even to enforce them, if claimed on the ground solely that they related to vessels. This came in question in 2 Hagg. Adm. 65, where the conveyance was void as a bottomry bond, but good, perhaps, as a mere mortgage. So, in 2 Browne, Civ. & Adm. Law, 95, note, it is said, that "a mortgage of a ship at sea," enables the mortgagee to bring trover in a court of law, but he cannot sue for her in admiralty. Id. 133; 2 Durn. & E. [2 Term R.] 64, 642. Admiralty never decides on questions of property, as between mortgagee and owner. "Upon questions of mortgage the court of admiralty has no jurisdiction." The Neptune, 3 Hagg. Adm. 132, 133. By general principles of admiralty law, a similar conclusion is reached. To be sure, it is laid down broadly in some places, that in England the admiralty once had cognizance if the right to a ship was contested. Hall, Adm. 87; 3 C. Rob. Adm. 133. But it has since been restricted to maritime liens on ships, such as the wages of seamen and hypothecation. 2 Browne, Civ. & Adm. Law, 406. The general test in contracts is not the thing pledged, but the subject-matter for which it is pledged. Admiralty jurisdiction in contracts relates to the subject-matter, it is said, and in torts to locality. The Mary [supra]; Thackarey v. The Farmer [Case No. 13,852]; 3 Durn. & E. [3 Term R.] 269; De Lovio v. Boit [Case No. 3,776]; Thomas v. Lane [Id. 13,902]. This means subject-matter of the contract, that is, the thing to be done being maritime, and not the object of a contract, as a ship. 2 Browne,

LELAND (Case No. 8,237)

Civ. & Adm. Law, 107. It does not extend to revenue seizures on land. [The Sarah] 8 Wheat. [21 U. S.] 394. Nor matters of account between part owners of a vessel. 2 Browne, Civ. & Adm. Law, 131, 132; [The Orleans v. Phoebus] 11 Pet. [36 U. S.] 175. But it does, if the matter of the contract itself relates to navigation, though the contract be made on land. 2 Browne, Civ. & Adm. Law, 90, 103; Zane v. The President [Case No. 18,-201]. It must be in its essence maritime, or to pay for maritime service. Plummer v. Webb [Id. 11,233]. So are ransoms. Maisonnaire v. Keating [Id. 8,978]. So as to forfeiture of vessel under the state acts. 2 Cro. 406. So, for exporting arms against a prohibition by statute. [U. S. v. La Vengeance] 3 Dall. [3 U. S.] 297. So, as to pilotage. The Anne [Case No. 412]; [Hobart v. Drogan] 10 Pet. [35 U. S.] 108. But a mere dispute about a ship does not make a marine business, when mortgaged at home, or attached by a sheriff; —admiralty has nothing to do with it by a libel. 2 Browne, Civ. & Adm. Law, 116, note. Most of the ancient and quaint distinctions, that to give jurisdiction over a contract, it must have been made at sea and not on land (2 Browne, Civ. & Adm. Law, 72); or must be a contract without seal (Id. 96); or must be one prosecuted in rem, are, in some respects, obsolete, compared with the test, that the matter of the contract itself, and not the object affected by it, must be maritime, or on marine business. 3 Story, Cont. 527–530; 2 Browne, Civ. & Adm. Law, 90, 103, 107; De Lovio v. Boit [Case No. 3,776]; [Martin v. Hunter] 1 Wheat. [14 U. S.] 335.

The present contract is questionable as a maritime one in some respects on these general principles. Thus, a contract to buy or build a ship, or a mortgage of one is generally no mo c a maritime contract than one to build or buy or mortgage a house. Andrews v. Essex Ins. Co. [Case No. 374]. It must be a perfected maritime contract, and not an executory one, to lead to it. But when executed, a vessel may be mortgaged to secure a common note of hand, or liability for goods sold and delivered by a retail trader on shore. 2 Browne, Civ. & Adm. Law, 555, infra arguendo. In point of fact here, however, the consideration of this mortgage appears to have been an account connected with navigation on advances chiefly for a voyage. But they were not so entirely, though that might furnish some ground for interference pro tanto, when a mortgage of a vessel for a different kind of debt would not. But besides the cases before cited on the general principle in 2 Hagg. Adm. 181, 182, —"fruit preserver,"—it was held, that the admiralty court will not enforce a mere mortgage of a ship, by ordering possession to be changed. So, 2 Dod. 288; 3 C. Rob. Adm. 94, 135; 1 Dod. 240. 6 Geo. 4, was passed to enable a mortgagee to have a vessel sold to pay the debt. He is not an owner for any other purpose under that statute. In The Portsea (1827), 2 Hagg. Adm. 84, the court refused to award a share in the proceeds of a vessel before sold, if the mortgagee had never been in possession. It was not deemed proper to settle his interests in admiralty. The Exmouth, Id. 88, note. See Abb. Shipp. 2; 2 Ld. Raym. 983; 4 East, 319; 4 C. Rob. Adm. 1, 4; The Mary [supra]. Now by 3 & 4 Vict. c. 65, § 3, courts of admiralty may decide on the rights of mortgagees to ships, if they are under arrest, or their proceeds be in admiralty. The Dowthorpe, 2 W. Rob. Adm. 80, 81; The Highlander, Id. 109. But they could not do so before. 3 Hagg. Adm. 402; 2 W. Rob. Adm. 82.

There is another objection to deciding such disputes here in admiralty, because they relate merely to a vessel, and without the aid of any statute as in England. It is, that where the title is disputed as to any thing, a court of admiralty will not interfere till that is settled elsewhere, especially if it relate to a vessel only mortgaged, and not hypothecated in bottomry. They consider that they have not jurisdiction to settle disputed titles to property, unless they have possession of the article, and the question as to title arises then incidentally. 2 Browne, Civ. & Adm. Law, 98. On this the rule is more inflexible than in chancery, when asked to annul or enjoin against a contract. 2 Browne, Civ. & Adm. Law, 430; The Warrior, 2 Dod. 288; 3 C. Rob. Adm. 133.

To be sure it must appear to be a real conflict as to title. not a mere plea of it, not a mere colorable title. 2 Dod. 290. Where possession exists, a court will not transfer it to former owners, unless the sale is clearly shown to be fraudulent. An action lies on the instance side for possession of a ship by a former owner against a purchaser abroad, when sold to raise supplies. But it is supposed that cases have occurred here where courts have allowed mortgages of ships to give jurisdiction, if to enforce them in rem, though the title is in dispute. And it is urged, that the English rules as to admiralty jurisdiction are no guide here. The Jerusalem [Case No. 7,293]; De Lovio v. Boit [Id. 3,776]. Rucher v. Conyngham [Id. 12,106]. And it has been said, that an owner may claim or any one interested, and have judgment of restitution of a ship. Dunl. Adm. Prac. 170; Clerke, Praxis Adm. 41. It has been held, that petitory as well as possessory rights may be decided, among several, and thus save several suits at law. Hall, Adm. 81, 87. In The Tilton [Case No. 14,054] jurisdiction was maintained over a libel to get possession of three-fourths of a ship, where the title was withheld from them. The contest was as to the validity of a sale of those parts. But that was a contest between part owners, and on that account gave jurisdiction. The jurisdiction is said to be clear where it concerns owners of ships as such. Godolph. Adm. 43. That is probably as to disputes between part owners. For otherwise it is said in England,

they usually refer the title to some other court to settle, though at times it is decided incidentally in changing possession, as before explained. The Tilton [supra], and cases there cited; 2 Browne, Civ. & Adm. Law, 112. In the United States, admiralty courts have gone into title in cases of salvage, bottomry, and forfeiture of marine interests, &c. The Tilton, and cases cited. But that does not settle the question here. In De Lovio v. Boit [supra], Judge Story says, that the admiralty still continues in England, "to entertain suits for the possession of ships." But if he means, that they do it except in cases of bottomry, or between part owners, or under express statutes, his idea does not seem supported by the books, and hence it will not answer from that case, or any English cases, to infer that a proceeding lies here by a mortgagee of a vessel to obtain possession of, and sell it, to pay the debt, when he is out of possession, and the debt or claim is disputed. Hurry v. The John [Case No. 6,923]. If this can be done, it must be on some other precedent, or on some general principles belonging rightfully to admiralty.

Having thus seen, that the reasoning and practice abroad are against the exercise of jurisdiction by admiralty courts, over mere mortgages of ships, unless authorized by express statutes to do it, and finding to my surprise no reported case here, where the jurisdiction has in such case been taken, and finding that this claim can be disposed of without settling that question, I do not feel disposed to decide on it positively without further examination. My present impressions are against it. The other grounds, on which it can be disposed of, are these. If a mortgagee, like Deshon here, could not prosecute his claim originally in admiralty against the vessel, because his debt is secured merely by a mortgage, and is contested, yet jurisdiction over it as against these funds now already in admiralty, and for further distribution of them, may be upheld there, because that court has already obtained and duly exercised jurisdiction over the vessel and the proceeds on other grounds, and for other parties. Gardner v. The New Jersey [Case No. 5,233.] It has already, in a libel against this vessel, sustained it for seamen's wages, and decreed, that this lien overrides all others, and is to be paid first. See The Sydney Cove, 2 Dod. 13; 1 Dod. 40. Next, that the last bottomry bond is to be paid in preference to any former ones, because the last is founded on the necessity of advances or repairs to preserve the vessel, and insure her return and profitable use, and is thus for the benefit of the holders of all previous bottomry bonds. The Mary [Case No. 9,187]; 1 Dod. 201, 289; 2 Dod. 2; 2 Hagg. Adm. 89; De Lovio v. Boit [supra]. The last shall be first, therefore, in payment. 2 Hagg. Adm. 65, note; Duke of Bedford, 2 Hagg. Adm. 294, 304; 7 Poth. Pandects,

426. Having done this, it seems unobjectionable to order what is left to be paid over to any claimant, who shows a legal and equitable right to it. The only doubt as to this course arises from a remark in Dunl. Adm. Prac. 28; The Maitland, 2 Hagg. Adm. 255. But this remark in Haggard is confined to cases where the claim is contested, and the court do not choose to decide it incidentally. Yet, in their discretion, we have already seen, that they will decide it sometimes, and uphold the mortgage claim. So in equity, sometimes, having got jurisdiction of a case for one purpose, the court can proceed to act as to other objects, which might be prosecuted at law, and would not originally be sustained in equity. Briggs v. French [Case No. 1,870]; [Massie v. Watts] 6 Cranch [10 U. S.] 148; [Peirsoll v. Elliott] 6 Pet. [31 U. S.] 95; 2 Brown, Parl. Cas. 39. On like principles in admiralty, if the court properly has jurisdiction, and sells an article, as a ship, it may decree some of the funds to claimants, whose claim was not an admiralty one, so as to sustain an original sale and jurisdiction to sell. 2 Browne, Civ. & Adm. Law, 81; 2 C. Rob. Adm. 236; 1 Ld. Raym. 152; 2 Ld. Raym. 983; The Mary [Case No. 9,187]; Belt, Adm. Prac. 58; Coulter v. L'Esperanza [Case No. 3,277]; [Ramsay v. Allegre] 12 Wheat. [25 U. S.] 615, Justice Johnson; Conk. Prac. 155; The Mary Ford, 3 Dall. [3 U. S.] 198. If admiralty has possession of property, it may allow to be instituted other supplemental suits to ascertain who it goes to,—the proceeds of it, "remnants and surpluses." Andrews v. Wall. 3 How. [44 U. S.] 568, 573. So it is said: "A mortgagee undoubtedly at that time could not institute proceedings in the court of admiralty, but it is quite a different question whether he could not intervene to protect his interest, when a suit was already instituted by parties competent to do so." 2 W. Rob. Adm. 82. It was held, that he could so intervene before the late act of parliament. Case of The Dowthorpe.

My conclusion, therefore, is, that a court of admiralty, after getting jurisdiction clearly, and selling a vessel, may distribute part of the proceeds to one, who could not have enforced the original sale through his lien, it not being by bottomry. A fund may be given in part to one, who has a lien on it at law, though not such a lien as could originally be prosecuted in chancery. Harper v. The New Brig [Case No. 6,090]; Gardner v. The New Jersey [supra]. This was at first refused in England as to mortgagees not in possession. Dun v. Bates, cited in 1 Hagg. Adm. 84, 88. But in a case like this, I think it would be done there now, and would be deemed harsh and unnecessary to turn a party over to other proceedings, when clearly entitled to the funds now before the court. The Packet [Case No. 10,655]. But it is further and finally urged against paying these proceeds to Deshon, that his mortgage is

void for not being duly recorded as a mere mortgage of a chattel, and not treating his lien as a bottomry. As a mortgage, it is necessary to be recorded. The Draco [Id. 4,057]. Though no notice is required to be given of a lien on a vessel, to make it valid. Daniel, Ch. Prac. 70, 77. Yet a mere mortgage must be recorded in conformity to the statutes of the state of Massachusetts, expressly requiring such conveyances to be recorded, unless possession accompanies the mortgage. This vessel was not taken possession of and retained by Deshon at the time of the conveyance, nor was the latter recorded till the mortgagors had failed, and an assignee been appointed to receive their effects, and public notice given of his appointment. The insolvent system of this state provides for a conveyance to the assignee of all the estate of the debtor. Act April 23, 1838; 2 Eden, Bank. L. 177.

Now this undoubtedly passed a title to all which belonged then to the debtor, but nothing more, except in cases of property, which the debtor may have conveyed to defraud creditors. It does not mean to dissolve valid mortgages, and insolvent systems usually do not dissolve them. 2 Hagg. Adm. 57; Edw. Adm. 118, 239; 2 Metc. [Mass.] 258; 3 Metc. [Mass.] 239; 4 Metc. [Mass.] 346. Here this vessel had been duly conveyed to Deshon in mortgage. The deed, though unrecorded, was valid as between the parties. The assignee stands in the shoes of the debtor in such case. The debtor is civilly dead as to his estate, and the assignee is his representative like an administrator on the estate. Mitchell v. Winslow [Case No. 9,673]; In re McLellan [Id. 8,894]. He is a privy in interest, and he has failed to make any satisfactory proof of fraud in the mortgage by the former owners to Deshon. The assignee has only the equities which the debtor had, except, as he is acting for the benefit of the creditors, when he can, in case conveyances have been made, which are fraudulent or against them, set them aside. He is not like a particular assignee or purchaser for a valuable consideration, but as any other assignee by operation of law, an administrator, or executor, or insurer to whom property has been abandoned. 9 Ves. 100; [Bayley v. Greenleaf] 7 Wheat. [20 U. S.] 56; 2 Story, Eq. Jur. § 1229; 10 Johns. 63; 6 Mann. 24; 2 Hill, 229. In France, by laws of Louis XIV., § 25, art. 2, all vessels are liable for debts of the last owner, till they make one voyage, unless sold by a judicial sale. See Laws, p. 298. It is true, that some of Deshon's claims might not be good, and of a character to sustain a bottomry bond, but they were all proper enough for a mortgage, and though not taking possession by the mortgagee, may be slight evidence of fraud, or some badge of it, as in cases of absolute sales, it has been considered one badge of fraud since Twynne's Case in Coke, yet it is not per se fraud. And, in case of a ves-

sel furnished thus with means to go to sea, the very design and nature of the advances show, that the possession for the voyage was to be retained by the mortgagor. Gray v. Jenks [Case No. 5,720]. Any other sufficient reason for not changing possession in case of a mortgage sufficeth. See cases in Almy v. Wilbur [Id. 256]; Haven v. Low, 2 N. H. 13. But a vessel should be taken possession of after the voyage by the mortgagee or vendee, as was done here. Gray v. Jenks [supra]; 4 Pick. 288, 389; 2 Pick. 599; 17 Mass. 110; 2 Durn. & E. [2 Term R.] 485; 9 Johns. 337; 3 Cow. 166; 4 Bing. 458; Wheeler v. Sumner [Case No. 17,501.] This mortgage did not purport to be an absolute sale on its face; and a secret agreement made and proved to the contrary, like the case cited from Parker v. Pattee, 4 N. H. 176; Wend. 596; but it is on its face a mortgage. If never recorded, then, it would be good against the debtor, and when not fraudulent, good against his assignee in bankruptcy. See Almy v. Wilbur, before cited. Where, under some English registry acts, sales are not valid at all unless recorded, the rule would be different on account of the express language used to the contrary. 2 East. 399, 400; Weston v. Penniman [Case No. 17,455]. See, also, bearing on this, 2 Hill, 628; 5 Hill, 16; 1 Denio, 163. But it is well settled here, that mortgages, whether of real or personal estate, not recorded, are good between the parties. And it is as well settled, that they are good against their assigns under bankrupt and insolvent systems, though not recorded till after their appointment. Briggs v. Parkman, 2 Metc. [Mass.] 267. The assignee of a bankrupt in these cases stands in his shoes. The St. Catherine, 3 Hagg. Adm. 253. Let the claim of Deshon, then, be enforced as to the proceeds, and that of Leland as well as of the assignee be dismissed.